UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OLGA CHANEY, individually and | * | CIVIL ACTION |
| On behalf of ROCKY CHANEY | * | |
| | * | NUMBER |
| VERSUS | * | SECTION |
| | * | |
| | * | JUDGE |
| ACADIA PARISH SHERIFF, KP GIBSON, | * | |
| WARDEN OF ACADIA PARISH JAIL LAURA | * | MAGISTRATE |
| BENOIT, OFFICER JUNIUS BELLARD, | * | |
| OFFICER GREG BENOIT, and OFFICER | * | CIVIL RIGHTS |
| EVAN RICHARD | * | JURY TRIAL DEMAND |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## COMPLAINT

## I.    INTRODUCTION

1.    This case involves the tragic death on August 20, 2019 of Rocky Chaney, a 38-year-old

American and Acadia Parish citizen.  As a result of a deterioration in his mental condition,

Mr. Chaney became manically depressed.  The plaintiff, Olga Chaney, became concerned

for her husband's and her own well-being. She had recently had him placed in a local

mental hospital but he was released days later. At this point she did not know what to do

to get her husband help with his depression. She did the only thing that she knew which

was to call 911.  Officers came to the residence and detained Mr. Chaney in Acadia Parish

Jail.

2.    Instead of providing adequate, appropriate and necessary care and treatment to Mr. Chaney,

the defendants failed in their professional duties and their legal obligations.  Mr. Chaney

was treated by the defendants in a callous, harsh and indifferent manner, resulting in his

death by suicide in a cell in the Acadia Parish Jail while rendered under suicide watch.  The

Acadia Parish Jail cell and the presumed suicide watch was an outmoded, dangerous and

completely inadequate facility, which, at all relevant times, was not a reasonable accommodation for a person suffering from Mr. Chaney's illness and disability and in his condition. The Acadia Parish Jail was operated and supervised by the Acadia Parish Sheriff's Office, under the leadership of the Warden of the Acadia Parish Jail.

3. Mr. Chaney was not adequately treated or cared for while in the custody of the defendants. He was denied appropriate and necessary medical, psychiatric, nursing and therapeutic care, treatment and supervision. Instead, he was confined in a hostile, barren and isolated environment that exacerbated and aggravated his condition, which was fragile and precarious to begin with. Defendants and their staff provided Mr. Chaney with access to materials to harm himself while in an acute state of emotional and psychological crisis. The mistreatment of Mr. Chaney by the defendants and their staff in this facility was in contravention of the community standard of care and violated applicable federal and state constitutional and statutory standards.

4. The defendants' actions and omissions, manifested in inadequate medical screening and intake, inadequate staffing, inadequate training and supervision of staff, inadequate facilities, inadequate policies and procedures relating to diagnosis and treatment of mentally ill and suicidal persons in custody, as well as inadequate care, treatment, and monitoring of Mr. Chaney were directly and causally related to Mr. Chaney's death.

## II.    JURISDICTION

5. This action is brought pursuant to 42 U.S.C. 1983, pursuant to the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, Section 504 of the Rehabilitation Act of 1973 which authorizes actions to redress discrimination based on disability and handicap, Title II off the Americans with Disabilities Act of 1990, 42

2

U.S.C. 12131, 42 U.S.C. 1988 and 42 U.S.C. 12205, et. seq.  Jurisdiction is founded on 28 U.S. C. Sections 1331 and 1343 and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the pendant jurisdiction of this Court to consider the claims arising under state law pursuant to 28 U.S.C. Section 1367.  A jury trial is requested.

### III.    PARTY PLAINTIFF

6.    Olga Chaney is the surviving wife of Rocky Chaney, who died in the custody and care of the defendants as further described herein.  Olga Chaney is a person of the full age of majority, who resides in Acadia Parish, Louisiana.  At the time of his death, Rocky Chaney was married to Olga Chaney.  He was a resident of Acadia Parish, Louisiana.

### IV.    PARTY DEFENDANTS

7.    Defendant Acadia Parish Sheriff, Sheriff KP Gibson, at all times described herein, and, as such is responsible for the hiring, training, supervision, discipline and control of the employees of the APJ, including medical and correctional staff.  He is also responsible for the supervision, administration, policies, practices, customs and operations of the APJ and its correctional facilities.  He is a final policymaker.  He is liable both directly and vicariously for the actions complained of herein.  He is sued in his individual and in his official capacity for those acts and omissions, which occurred while he was Sheriff.  As Sheriff of Acadia Parish he accepts federal funds and is charged with providing custodial care to prisoners in  custody  of  the  Acadia  Parish  Jail  and directed all  medical  providers  and/or  deputies  in  the  care  of  Mr.  Rocky  Chaney,

3

deceased.  He is a person of the full age of majority and,  on  information  and  belief,  a resident of the Western District of Louisiana.

8.      Acadia Parish Jail Warden, Laura Benoit, at all times described herein, and, as such is responsible for the hiring, training, supervision, discipline and control of the employees of the APJ, including  medical  and  correctional staff.  She is also responsible for the supervision, administration, policies, practices,  customs  and  operations  of  the  APJ and its correctional facilities.  She is a final policymaker.  She is liable both directly and vicariously for the actions complained of herein.  She is sued in her individual and in her official capacity for those acts and omissions, which occurred while she was Warden. As  Warden  of  Acadia  Parish  Jail,  she  accepts  federal  funds  and  is  charged  with providing custodial care to prisoners in   custody  of  the  Acadia  Parish  Jail  and directed  all  medical  providers  and/or  deputies  in  the  care  of  Mr.  Rocky  Chaney, deceased.  She is a person of the full age of majority and, on information and belief, a resident of the Western District of Louisiana.

9.      Defendant Officer Junius Bellard, employed by the Acadia Parish  Sheriff's  Office  as a correctional officer.  At all pertinent times herein he was responsible for insuring that there was appropriate and constant monitoring of Mr. Rocky Chaney while he was on "suicide watch" and of communicating reported or obvious medical needs of prisoners, including Rocky Chaney to appropriate persons.  He was responsible for monitoring, checking on, and supervising the condition of Rocky Chaney as described herein.  He also had the duty to report and to intervene if and when they became aware that other deputies or employees of the APJ were not properly performing their duties relative to Rocky Chaney.  He is sued in his official and individual capacities.  He is of full age of

majority and, on information and belief, he is a resident of the Western District of Louisiana.

10. Defendant Officer Greg Benoit, employed by the Acadia Parish Sheriff's Office as a correctional officer.  At all pertinent times herein he was responsible for insuring that there was appropriate and constant monitoring of Mr. Rocky Chaney while he was on "suicide watch" and of communicating reported or obvious medical needs of prisoners, including Rocky Chaney to appropriate persons.  He was responsible for monitoring, checking on, and supervising the condition of Rocky Chaney as described herein.  He also had the duty to report and to intervene if and when they became aware that other deputies or employees of the APJ were not properly performing their duties relative to Rocky Chaney.  He is sued in his official and individual capacities.  He is of full age of majority and, on information and belief, he is a resident of the Western District of Louisiana.

11. Defendant Officer Evan Richard, employed by the Acadia Parish Sheriff's Office as a correctional officer.  At all pertinent times herein he was responsible for insuring that there was appropriate and constant monitoring of Mr. Rocky Chaney while he was on "suicide watch" and of communicating reported or obvious medical needs of prisoners, including Rocky Chaney to appropriate persons.  He was responsible for monitoring, checking on, and supervising the condition of Rocky Chaney as described herein.  He also had the duty to report and to intervene if and when they became aware that other deputies or employees of the APJ were not properly performing their duties relative to Rocky Chaney.  He is sued in his official and individual capacities.  He is of full age of majority and, on information and belief, he is a resident of the Western District of Louisiana.

# V.     STATEMENT OF FACTS

12.   Upon information and belief, just days before August 2, 2019, Rocky Chaney had been hospitalized at Central Louisiana Psychiatric Hospital in Alexandria, Louisiana for attempting to hang himself at his home. Rocky spent a few days at the mental hospital before he was forced out and back with his wife. A few days after getting out of the mental hospital, Rocky became manically depressed and started acting out which precipitated the need for his wife, Olga, to seek additional help for him. At this time, Mrs. Olga contacted the police and that is  how Rocky became a resident of Acadia Parish Jail on or about August 2, 2019.

13.   At the time of the booking, Rocky was prescribed psychotic medicine that was absolutely vital to his mental health. APJ was aware of this medication and the need for the same.

14.   While a resident of APJ, Rocky attempted suicide on August 17, 2019 by trying to swallow sharp objects. As a result, he was found coughing up blood. APJ transferred Rocky to Acadia General Hospital. At Acadia General, APJ Officers informed the hospital that Rocky tried to commit suicide and told them explicitly that he wanted to kill himself.

15.   As a result, the hospital noted his mental illness and informed the APJ that mental illness can exacerbate suicidal thoughts of someone who is severely depressed.

16.   Therefore, the doctors at Acadia General explicitly informed APJ to have Rocky seen by a medical professional within two days following him being released on August 17, 2019. The hospital also noted his need for his psychotic medication. Finally, the hospital placed Rocky on 24-hour suicide watch due to his history of attempted suicide.

17.    Three (3) days later, Rocky Chaney was found naked and hanging dead by an inmate inside of his cell while on suicide watch.

18.    It is well known that nearly all jail suicide deaths are the result of the victim hanging themselves. In fact, the U.S. Department of Justice, states that 93% of all suicides in jail are the result of the inmate hanging themselves, mostly with either bedding or clothing. Yet, the Acadia Parish Jail placed an inmate who had already proven he was capable of committing suicide into a cell with an easily accessible metal vent that sits right above the latrine and which can be easily accessed by simply standing on the latrine. This vent might as well have been a metal hook because that is exactly what it was used as. It was so strong that it allowed Rocky to literally hang from it.

19.    APJ was made aware of Rocky's vital mental health prescriptions at time of booking.

20.    APJ admitted in the record that it refused Rocky's vital psychotic medications.

21.    APJ was made aware on August 17, 2019, that Rocky attempted to commit suicide.

22.    APJ is given strict instructions by Acadia General Hospital to have Rocky seen by a medical professional within 2 days following his release after attempting suicide on August 17, 2019.

23.    The record is clear that APJ never complied with the physician instructions given by Acadia General. Following his attempted suicide and instructions by AGH, Rocky was never seen by a mental health professional and not even a medical professional for the remainder of his life.

24.    The record shows that APJ never even consulted a medical professional on his behalf, nor attempted to contact his medical doctor.

25. Following Rocky's attempted suicide on August 17, 2019, the record is clear that his wife was never contacted and never informed about the incident.

26. Medical records from Acadia General Hospital (AGH) show that after his suicide attempt while in custody of APJ on August 17, 2019, the physicians at AGH placed him on suicide watch.

27. Jail records and video surveillance files show that on August 17, 2019, after being released from AGH, Rocky is placed on 24-hour suicide watch and is placed in a tiny detox cell with only one window located on the door of the cell.

28. This detox cell is fixed with a non-stop camera monitoring system that easily allows anyone with a computer or laptop to view inside of the entire cell at all times. All an Officer of the jail has to do is look at the screen to observe Rocky Chaney in his tiny detox cell.

29. This video monitoring system allows APJ Officers to be able to observe Rocky Chaney at any time and without having to physically walk to his cell door or sit outside his cell door in order to observe him.

30. Jail Logs show that while Rocky was on 24-hour suicide watch, Officers for APJ:

    a. On multiple occasions falsified records that he was still being observed,

        i. See Suicide logs August 18, 2019, August 19, 2019, and August 20, 2019.

        ii. Officer Junius Bellard stated in interview with Detective Broussard that he admits that he falsified suicide watch observation records by writing them in advance.

      iii.  Officer Benoit stated in interview with Detective Broussard that he was too aware that Rocky Chaney was not being observed while on suicide watch.

b.  That Officers intentionally failed to properly document their observation of Rocky and his conditions/status.

c.  Intentionally failed to observe Rocky Chaney while on suicide watch. APSO Jail Logs prove that APJ Officer falsified records that Rocky was still being observed while on suicide watch.

d.  Log shows that on August 20, 2019, APJ Officer Junius Bellard documented that at 19:50 hours, "visual rounds made at all tiers." This is a falsified document. Video surveillance file from inside Rocky's cell proves that Rocky Chaney was hanging at this time and was not found by Officer Bellard because Officer Bellard did not in fact perform the rounds check he documents.

      i.  Video Surveillance from the hall right outside Rocky's cell at 19:50 hours also proves that no APJ Officer made a visual round at Rocky's cell.

e.  It is important to note that to observe Rocky Chaney on suicide watch in his detox cell, all Officer Bellard had to do was look at his screen which has the video surveillance of Rocky's cell.

31.    The Suicide Logs show that Rocky Chaney was left unobserved on extreme suicide watch from 8:30AM on 8/20/2019 until another inmate found him dead hanging at 8:15PM.

32.    The Jail Logs also prove that even after APJ finally found Rocky Chaney hanging in his cell, it took them nearly 20 minutes to call 911.

33.   In interviews with Detective Broussard on the same day, both Officer Benoit and Officer Bellard admitted this to be true.

34.   When questioned by Detective Broussard as to why it took nearly 20 minutes to even dial 911 after finding Rocky hanging, Officer Bellard stated that it was jail policy and procedure that he is NEVER allowed to call 911 without first getting approval to do so from his superiors, Sergeant.

35.   The Detectives then attempted to see how strong this policy and procedure was by providing multiple hypotheticals to Office Bellard including what if he finds multiple Officers bleeding everywhere due to a jail riot or event, is he then allowed to call 911? Officer Bellard stated, NO.

36.   Officer Bellard under video questioning by Detectives stated the following:

   a.   Office Bellard stated "it was procedure to not call 911."

      i.   At 23:14 in the interview, Office Bellard is questioned why he never called 911 after finding or learning of Rocky hanging in his cell, Office Bellard stated "I was just following orders"

      ii.   Detective: "You don't do anything without talking to your sgt?"

      iii.   Bellard: "yes."

      iv.   Detective: "Even if it's life or death?

      v.   Bellard: "Yes."

   b.   Bellard admits that he was too busy to observe Rocky Chaney because he had other things to do such as take phone-calls during watch.

37.     Sgt. Benoit stated under questioning by Detective Broussard that when he came on shift on

August 20, 2019, he saw that the suicide watch logs were no longer being observed and so

he contacted the jail medic to ask if Rocky was taken off suicide watch and was told No.

38.     Sgt. Benoit then told the Detectives that he then told the jail medic "well, don't have to do

logs for Rocky anymore."

39.     There is a camera inside of the cell Rocky Cheney was being held in while he was on

suicide watch. This camera means that to observe Rocky Cheney, all an Officer had to do

was pulled up the screen on their computer. In fact, the Officer could have left the screen

box open on his computer to monitor him constantly without the Officer having to move

an inch or say a thing.

40.     Video Surveillance of inside Rocky's cell:

    a.      Starting around 00:34:03 hours on 8/20/19, the video shows Rocky on multiple

            occasions starts the process of trying to hang himself. This is seen multiple times

            on the video.

    b.      At 10:13 hours, Rocky is once again seen trying to prepare for his suicide attempt.

            He can be seen standing on the latrine up against the preparing to hang himself.

    c.      At 12:49 Rocky again is seen on camera trying to prepare for hanging himself as

            he is seen trying to make a noose around his neck.

    d.      At 13:05 Rocky starts writing his large final death note on the front wall that is

            visible to anyone who looks in his window into his cell or looks into his cell.

41.     This death note is easily visible on camera as well as in person and is visible to anyone

who dares to look for four (4) hours prior to Rocky starting to hang himself.

a.  At 17:42 hours Rocky is seen on camera once again trying to position himself and preparing for his own hanging by standing up against the wall to see how to tie himself.

b.  At 17:56 Rocky is seen on camera starting to hang himself in front view of his cell window.

c.  At 18:03 Rocky's body can be seen no longer moving.

d.  At 20:17:24 this is the first time an Officer from APJ checks on him and finds him hanging after being alerted by another inmate.

e.  At 20:48:49 the first paramedic is seen on camera near his cell.

f.  Over 30 minutes passed from the time APJ Officer found Rocky hanging to when a paramedic shows up at his cell.

42.  Specifics of Video Surveillance of Hall next to Rocky Chaney's cell where he is on suicide watch:

a.  At 16:10:23 a APJ Officer is seen opening Rocky's cell and looks directly at the wall and still doesn't say anything regarding the large death note written on the wall. There is never any reporting of this death note in the logs.

b.  Rocky is on suicide watch and is supposed to have no objects and yet not only does the Officer not inquire about why there is a large death note on the wall that is not supposed to be there and wasn't there the day before, but he doesn't even inspect or inquire as to how or what Rocky used to write it or its meaning.

c.  At 16:12:52 the APJ Officer and APJ medic open his cell and Rocky's death note goes again completely unnoticed or intentionally bypassed.

d.  At 16:16:19 the APJ medic opens Rocky's cell again for a short amount of time but

again makes no inquiry about the large death note located on the wall facing him.

e.     At this same time, under questioning by Detectives, this APJ Medic says he, without any consult from a medical professional, decided Rocky was no longer required to be on suicide watch despite the presence of a death or suicide note in plain view of the officer(s). Again, no inquiry is made about the death note on the wall staring him in the face. Also, Rocky is not even three days removed from his previous suicide attempt.

43.   No report of this note is logged as well.

44.   An officer should have logged it, inspected the note, inspected why and how it got there but that never happened on multiple occasions.

45.   At 17:51 the APJ medic walks right pass Rocky's cell and doesn't look in the window nor does a physical check on Rocky.

46.   At 17:53-55 Rocky's body is now hanging in view of the cell door window as workers are seen on camera working on the cell door to the right.

47.   At 17:56 an APJ Officer is seen walking within arm's length of Rocky's cell as he remains hanging and still alive. But does not even attempt to turn to look into Rocky's window.

48.   At 17:59:28 an Officer again walks right past his cell while Rocky is hanging directly in front of the window and does not turn to look in the window or check on Rocky.

49.   At 18:01:45 Officer again walks right pass Rocky's windowed cell while he is hanging and does not turn to look in the window or check on Rocky.

50.   At 18:03:26 Officer walks literally right next to Rocky's window while he's still hanging and doesn't look in the window or check on Rocky.

51.    At 18:07:51 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

52.    At 18:08:25 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

53.    At 18:13:21 a female Officer walks right pass his windowed cell as he is hanging and does not turn to look in the window or check on Rocky.

54.    At 18:16:54 medic Guidry walks right pass Rocky's cell and window as he is hanging and does not even turn to look in the window or check on Rocky.

55.    At 18:17:27 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

56.    At 18:18:34 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

57.    At 18:23:20 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

58.    At 18:24:42 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

59.    At 18:27:55 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

60.    At 18:29:45 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

61.    At 18:35:10 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

62.  At 18:36:20 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

63.  At 18:36:59 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

64.  At 19:25:10 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

65.  At 19:27:40 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

66.  At 19:35:59 again an Officer literally walks right pass Rocky's window as he is hanging and does not turn to look in the window or check on Rocky.

67.  At 19:37:27 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

68.  At 19:41:21 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

69.  At 19:43:23 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

70.  At 19:43:23-19:55:21 Logs state on page 2 of the APSO Logs that the Officer made rounds at 19:50 and that is a falsified statement and document.

71.  At 19:55:21 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

72.  At 19:58 an officer stops literally right in front of Rocky's cell and window for about 10 seconds and still doesn't even look towards his window or check on Rocky.

73.   At 20:04:10 two Officers walk right by his window and fail to look into his window or do a check on Rocky as he remains hanging in plain view.

74.   At 20:14:11 again an Officer literally walks right pass Rocky's window as he is hanging and doesn't turn to look in the window or check on Rocky.

75.   At 20:15:49 an inmate and not anyone employed by the APJ, finds Rocky hanging by simply looking into his cell window.

76.   Video shows that the inmate was able to see Rocky hanging simply by peering into the window of Rocky's cell.

77.   At 20:17:24 Officers finally open his cell door.

78.   At 20:18:34 after finding him hanging, an Officer casually walks pass his cell with no urgency.

79.   At 20:20:38 two Officers can be seen on camera just standing around.

80.   At 20:48 Acadian Ambulance finally arrives to the scene.

81.   Video footage shows that Acadia Parish Jail Officers and/or medics walked within arm's length of Rocky's window and cell an astonishing thirty times (30) during nearly three (3) hours he was hanging, and nobody noticed his body hanging in plain view and nobody ever thought to check on him.

82.   The Inmate who found him hanging proved that all the APJ had to do was simply look into his cell window as he did and Rocky would have been noticed and saved.

83.   The Acadia Parish Jail went four (4) hours from the time of last contact with Rocky to when they found him dead. And before those four (4) hours, Rocky went unwatched for over five (5) more hours while on suicide watch.

84. Furthermore, Rocky Chaney went a total of thirteen (13) hours while on suicide watch without being continuously monitored.

85. If APJ had done even the most basic attempt of monitoring him such as observing the camera located in his cell, APJ would have seen that on many occasions throughout the final 13 hours of Rocky's life, Rocky could be seen physically preparing to hang himself.

86. The risk of serious harm and/or death to Mr. Chaney was known, must have been known or should have been known to the defendants, who failed to take appropriate and necessary measures to protect and preserve his life and safety, as set forth herein.

87. The actions of the defendants as set forth herein, resulted in the suffering and death of Mr. Chaney.

88. The acts and omissions of the defendants, as described herein, were under color of law and in the course and scope of their employment.

## VI.   FIRST CAUSE OF ACTION

89. Plaintiffs repeat and re-allege each and every allegation of the complaint.

90. The defendants, acting individually and together, and under the color of law, engaged in a course of conduct and conspired to engage in a course of conduct which acted to deprive Rocky Chaney of his constitutional rights and did deprive him of said rights, specifically, the right of Rocky Chaney to reasonable and adequate medical care, the right to be free from cruel and unusual punishment, the right to be free from unreasonable search and seizures, the right to liberty, the right to be free from undue bodily restraint, and the right to due process and equal protection of the laws as protected by the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. 1983.

91.   At all times pertinent herein the defendants acting individually and collectively acted unreasonably, recklessly and with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Rocky Chaney.

92.   The defendants' actions were reckless, willful, wanton and malicious.

93.   Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Rocky Chaney, deceased, described herein, but failed to do so.

94.   Plaintiff further alleges that such acts and omissions as stated herein were the proximate cause and cause in fact of the injuries sustained and the death of Rocky Chaney and the damages incurred thereby.

### VII.   <u>SECOND CAUSE OF ACTION</u>

95.   Plaintiff repeats and re-alleges each and every allegation of the complaint.

96.   The Defendants acting individually and collectively, established, condoned, ratified and encouraged customs, policies, patterns and practices at the Acadia Parish Jail which directly and proximately caused the deprivation of the civil and constitutional rights of the deceased as alleged herein, and the injuries and damages described herein, in violation of the First, Fourth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. 1983.

97.   These written and unwritten policies, customs and practices included among others,

a.   Inadequate, improper and unreasonable screening, treatment, monitoring, and supervision of the serious medical and psychiatric needs of persons in custody.

b.   Inadequate and unreasonable sick call, referral and follow-up procedures relative to the serious medical and psychiatric needs of persons in custody.

c.   Inadequate and unreasonable on-site medical and psychiatric staffing and coverage.

d.   Hiring of inadequately trained persons to render medical and psychiatric treatment to persons in custody.

e.   Inadequate training, supervision and discipline of medical personnel responsible for furnishing medical and psychiatric treatment and services to persons in custody.

f.   Inadequate hiring, training, supervision and discipline of deputies and supervisors responsible for the observation and monitoring of suicidal prisoners and the identification and communication of serious medical needs of persons in custody to appropriate medical personnel.

g.   A pattern and practice of deputies and medical personnel ignoring prisoners' requests and needs for medical and/or psychiatric attention so that prisoners' serious medical and psychiatric needs were frequently ignored and, in those instances where medical and/or psychiatric treatment was ultimately obtained, it was often unreasonably delayed and inadequate to the medical and psychiatric needs of the prisoners, causing serious pain, suffering, injury and/or death.

h.   Inadequate and unacceptable policies, procedures and practices relating to placing persons on suicide watch, including but not limited to the following,

   i.   Failing to require regular, frequent and meaningful assessment of the physical and mental status and condition of suicidal prisoners.

   ii.   Failing to require regular, frequent, meaningful and proper documentation

of prisoners under suicide watch by nurses and/or qualified medically trained personnel which include but are not limited to conducting meaningful assessments, taking vital signs, and providing therapeutic care.

iii.    Failing to require that policies, procedures and practices in the jail for treatment of suicidal and mentally ill prisoners comport with medically accepted standards in the community.

iv.    Inadequate training, supervision and discipline of deputies who are required to observe and monitor prisoners on "suicide watch" and report and record accurately their observations.

v.    Failing to require adequate physical and mental evaluations of inmates to determine whether the use of "suicide watch" procedures were effective.

vi.    Allowing prisoners to be held in "suicide watch" for unreasonable periods of time without requiring adequate physical and psychiatric examinations by a physician, psychiatrist or other appropriately licensed and trained medical personnel.

vii.    Permitting and condoning violations by medical and security personnel of written policies and procedures regarding medical and psychiatric care of persons who are suicidal or in acute mental health distress, resulting in significant discrepancies between written policies and procedures and actual practice and custom, with no meaningful discipline, consequences or accountability for said violations or discrepancies, to the detriment of the health, safety and welfare of the prisoners in their care.

viii.    Inadequate review or quality control of suicide watch orders, procedures

and conditions to ensure that they are being properly implemented and monitored.

ix.   Inadequate documentation and record keeping of suicide watch observation forms of individuals who are under "suicide watch" by failing to adequately train personnel who fill out these reports, failing to require detailed, content-based reporting, failing to make these reports an integral part of the prisoner's medical records, and failing to require or insure frequent, regular review of these documents by medically trained personnel, among deficiencies.

x.   Failing to provide adequate staffing for monitoring, evaluating and treating prisoners under "suicide watch."

xi.   Improper use of "suicide watch" as punishment and discipline.

xii.   Allowing medical and security personnel to prepare inadequate progress notes and records regarding the condition of prisoners who are suicidal or experiencing acute mental health crisis, without appropriate discipline or accountability.

i.   Inadequate and unacceptable policies, procedures and practices relating to treatment, observation and monitoring of persons who are suicidal or in need of care for serious medical issues, including but not limited to the following,

i.   Accepting prisoners into the jail who are suicidal when the facility lacks appropriate and safe facilities, and has inadequate staff, policies and procedures for their care and safety.

ii.    Designing and implementing a "Suicide Watch" program that is dehumanizing, counter-productive, anti-therapeutic, harmful, and ineffective.

iii.   Allowing, condoning, permitting and/or ratifying untrained and undisciplined correctional officers to do monitoring and observation of suicidal prisoners.

iv.   Allowing, condoning, permitting, and/or ratifying the practice of correctional officers not properly or truthfully filling out APJ Suicide Watch Observation Checklists contemporaneously with the observation.

v.    Accepting prisoners into APJ who have serious medical and psychiatric conditions, when the facility lacks appropriate and safe conditions, and had inadequate staff, policies and procedures for the care and safety of the prisoners.

j.    Inadequate, deficient or non-existent treatment plans for patients who are suicidal and experiencing an acute mental health crisis.

k.    Inadequate quality control policies, procedures and practices, inadequate critical incident review, inadequate mortality reviews and inadequate identification and correction of serious deficiencies in policy and practices affecting the delivery and quality of medical and psychiatric services.

98.    At all pertinent times herein the defendants acted unreasonably and with deliberate indifference and disregard for the constitutional and civil rights and life and safety of the deceased, Rocky Chaney.  The actions of the defendants were malicious, willful, wanton and reckless.

99.   Plaintiff further alleges that such acts and omissions as alleged herein were the proximate cause and cause in fact of the injuries sustained, the death of the Rocky Chaney and the damages incurred.

### VIII.   THIRD CAUSE OF ACTION

100.   Plaintiff repeats and re-alleges each and every allegation of the complaint.

101.   Rocky Chaney was a person with a disability under Section 504 and the Americans with Disabilities Act.

102.   Defendant Acadia Parish Sheriff is in charge of the Acadia Parish Sheriff's Office and is a public entity that must comply with Section 504 and the Americans with Disabilities Act.

103.   The Plaintiff is entitled to relief against the defendants, particularly the Sheriff, as he and the Sheriff's Office had notice of Rocky Chaney's disability, had the means to reasonably accommodate his disability, and failed to make that reasonable accommodation.

104.   Section 504 of the Rehabilitation Act requires recipients of federal funds, including defendant Acadia Parish Sheriff and the Sheriff's Office, to reasonably accommodate persons with disabilities in their facilities, program activities and services.  It further requires such recipients to modify such facilities, services and programs as necessary to accomplish this purpose.  Defendant Sheriff and the Sheriff's Office have been and are recipients of federal funds.

105.   The ADA defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled.  Such services include, inter alia, provisions necessary to achieve effective mental health care and protect a person from suicide.

106.   Instead of accommodating Rocky Chaney's needs, the defendant Sheriff and the Sheriff's office denied Mr. Chaney services and programs available to others, including but not limited to access to appropriate medication, access to attorney-client and spiritual/religions visits, family contact, access to a telephone, and access to appropriate care and treatment that could have protected him from suicide and could have reduced the risk of harm of suicide.  The failure to accommodate Rocky Chaney's disability was intentional and/or deliberately indifferent to Rocky Chaney's rights under Section 504 and Title II of the ADA and was a proximate cause of his death.

107.   The APJ failed to take necessary steps to ensure that no individual with a disability or with mental illness which could result in suicide is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled.  Such services include, inter alia, provisions necessary to achieve effective mental health care and protect a person from suicide.

108.   Instead of accommodating Rocky Chaney's needs, the defendant Sheriff and the Sheriff's office denied Mr. Chaney services and programs available to others, including but not limited to access to appropriate medication, access to attorney-client and spiritual/religions visits, family contact, access to a telephone, and access to appropriate care and treatment that could have protected him from suicide and could have reduced the risk of harm of suicide.  The failure to accommodate Rocky Chaney was intentional and/or deliberately indifferent to Rocky Chaney's rights under Section 504 and Title II of the ADA and was a proximate cause of his death.

## IX.   FOURTH CAUSE OF ACTION

109.   The plaintiff repeats and re-alleges each and every allegation of the complaint.

110.   The pendant jurisdiction of the Court is invoked for all claims under state law.

111.   At all times described herein, the defendants, individually and collectively, acted negligently, with gross negligence and/or intentionally in denying reasonable, adequate and necessary medical care to Rocky Chaney, confining him in unsafe, unreasonable and dangerous conditions providing him with access to material with which to harm himself and inflicting physical injury and severe emotional, mental, and physical pain and suffering upon him, in violation of Louisiana law.

112.   The actions of the defendants also caused the wrongful death of Rocky Chaney.  At all pertinent times the defendant's employees of the APJ were acting in the course and scope of their employment and the defendant sheriff in his official capacity is vicariously liable for the injuries sustained and damages incurred herein as a result of their actions.

113.   The defendants each acted in derogation of their duties as professionals and their treatment of Rocky Chaney constituted egregious intentional conduct that constituted a wanton disregard for Mr. Chaney's serious medical needs.

114.   The defendants are liable for the wrongs complained of herein by virtue of encouraging, aiding, abetting, counseling, ratifying, and condoning the commission of the afore described acts, by their failure to properly administer, organize and staff the medical and correctional program at the jail and for the failure to properly screen, hire, train, supervise and discipline persons under their supervision and control whose acts and omissions contributed to the injuries sustained and the death of Rocky Chaney.

115.   The defendants are liable pursuant to ad under the Eighth Amendment for denying humane conditions of confinement to Mr. Rocky Chaney particularly when they knew that the Mr.

Chaney faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

116.   The defendants are liable individually and jointly for their actions alleged herein.

117.   Plaintiff further alleges that the above described acts and omissions were the proximate cause and cause in fact of the injuries described herein.

## X.   DAMAGES

118.   As a result of the actions of the defendants as described above, damages have been incurred as follows:

   a.   Rocky Chaney (deceased) suffered conscious and severe physical, mental and emotional distress, pain and suffering and pre-death terror prior to his death and lost his life.

   b.   Olga Chaney, the wife of Rocky Chaney, suffered emotional pain and suffering, past, present, and future, and suffered the loss of love, affection, and companionship of her husband, Rocky Chaney.

   c.   Funeral and burial expenses were incurred as a result of the actions alleged herein.

## XI.   PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that after due proceedings there be judgment rendered herein in the plaintiff's favor and against all of the defendants individually and jointly, as follows,

1.   Compensatory and punitive damages as prayed for herein;

2.   Reasonable attorneys' fees, all costs of these proceedings including expert witness fees under 42 U.S.C. 1988 and 12205, et seq. and legal interest;

3.   That this matter be tried by jury; and

4.   All other relief that this Honorable Court deems just and proper.

Respectfully submitted:


S/David Rutledge
**DAVID F. RUTLEDGE**, La. Bar No. 33639
330 Settlers Trace Blvd., Ste. A
Lafayette, LA 70508
Telephone (337)484-1529
Facsimile (337) 806-9994
david@davidrutledge.com
Attorney for the Plaintiff